### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DELVIN JACKSON,

        Plaintiff,

    v.

ALBERT STUBENVOLL,

        Defendants.

No. 16-cv-05746
Judge Franklin U. Valderrama

### ORDER

Plaintiff Delvin Jackson (Jackson) filed a complaint against Defendant Albert Stubenvoll (Stubenvoll), a Sergeant at the Cook County Department of Corrections (CCDOC) asserting a claim for excessive force under 42 U.S.C. § 1983, based on an encounter between Stubenvoll and Jackson when Jackson was a pretrial detainee at the CCDOC. Before the Court is Stubenvoll's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. R. 135, Mot. Summ. J.[1] For the following reasons, Stubenvoll's motion is granted.

### Background

The following facts are set forth favorably to Jackson, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Jackson's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*,

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

805 F.3d 278, 281 (7th Cir. 2015) (citation omitted). *See Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed.

At all times relevant to this litigation, Jackson was an inmate at the CCDOC. Pl.'s Resp. DSOF ¶ 2.[2] Stubenvoll is an employee of the Cook County Sheriff's Office and is a Correctional Sergeant at the CCDOC. *Id.* ¶ 3. On December 2, 2015, Jackson was scheduled to go to court. *Id.* ¶ 12. When it came time for Jackson to be handcuffed to attend court, he requested that the officer place the handcuffs over his thermal sleeves. *Id.* ¶ 13. The officer denied the request and called for Stubenvoll, after Jackson requested to speak to a sergeant. *Id.* ¶¶ 14–17.

Upon arriving at Jackson's cell, Stubenvoll spoke with Jackson and explained that the officers would not place handcuffs over Jackson's thermal sleeves due to security concerns that detainees could escape the handcuffs if a barrier is between the wrist and the handcuff. Pl.'s Resp. DSOF ¶ 18. Jackson and Stubenvoll exchanged words and Jackson crossed his arms. *Id.* ¶ 19. Jackson refused to be handcuffed unless they were placed over his thermal sleeves. *Id.* ¶ 20. After this exchange, Stubenvoll and another officer escorted Jackson back to his cell. *Id.* ¶ 21. Approximately ten minutes later, Stubenvoll and the officer returned to Jackson's

---

[2]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for Stubenvoll's Statement of Undisputed Facts (R. 137); "Pl.'s Resp. DSOF" for Jackson's Response to Stubenvoll's Statement of Undisputed Facts (R. 145); "PSOAF" for Jackson's Statement of Additional Facts (R. 145); and "Def.'s Resp. PSOAF" for Stubenvoll's Response to Jackson's Statement of Additional Facts (R. 147).

cell and Stubenvoll placed handcuffs on Jackson before escorting him to the elevator. *Id.* ¶¶ 22–23. Although the parties disagree over the contents of the conversation, both admit that during the escort, Jackson was "jawing"[3] at Stubenvoll multiple times, and a few unidentifiable detainees were amused by the statements Jackson made. *Id.* ¶ 27; Defs.' Resp. PSOAF ¶¶ 3, 5.

Once the parties were in the elevator, Jackson and Stubenvoll's version of events diverge. As Stubenvoll tells it, Jackson continued talking to Stubenvoll and Stubenvoll responded by telling Jackson to face the elevator wall. DSOF ¶¶ 28–29. Jackson did not turn and face the wall. *Id.* ¶ 30. Rather, while still handcuffed, Jackson approached Stubenvoll twice while the two were in the elevator. *Id.* ¶ 31. Stubenvoll asserts he extended his arms to create space and took a step back each time to prevent each of Jackson's approaches. *Id.* ¶¶ 32–33. According to Stubenvoll, on the third approach, Jackson kicked Stubenvoll in the groin. *Id.* ¶ 35. Seconds after the kick, the elevator doors opened and Stubenvoll took a firm grip of Jackson's handcuffs and moved Jackson into the hallway in the basement to the custody of other officers. *Id.* ¶¶ 36–39. Stubenvoll states that he paused for a moment at the door of the breakroom to inspect and create a video recording of his pants as evidence of being kicked by Jackson. *Id.* ¶ 40.

As Jackson tells it, Stubenvoll knew there were no cameras in the elevator. PSOAF ¶ 9. Once Jackson and Stubenvoll got into the elevator, the two were about six feet apart. Def.'s Resp. PSOAF ¶ 10. While they were in the elevator, Jackson

---

[3]Stubenvoll called Jackson's "jawing" verbal assault. Defs.' Resp. PSOAF ¶ 4.

repeatedly complained that Stubenvoll put the handcuffs on too tight. *Id.* ¶ 11. In response, Stubenvoll told Jackson: "I can do what I want to do, and I don't have to answer to you" before physically turning Jackson around to face the elevator. Pl.'s Resp. DSOF ¶ 28. Stubenvoll then stuck both his hands out and pushed Jackson into the elevator wall, twice. PSOAF ¶ 17. Jackson asserts that his right shoulder and back hit the elevator wall because of the push. Pl.'s Resp. DSOF ¶¶ 45–47, 52.[4] After the elevator door opened, Stubenvoll grabbed Jackson by the handcuffs and escorted him about a two-block walk to the custody of other officers. *Id.* ¶ 36. Jackson denies kicking Stubenvoll while they were in the elevator. *Id.* ¶ 35.[5]

It is undisputed that, following the alleged kick, Stubenvoll pressed criminal charges against Jackson, who was tried before a jury and found not guilty. Def.'s Resp. PSOAF ¶¶ 35–36.

Jackson filed suit against Stubenvoll asserting one claim for excessive force under 42 U.S.C.§ 1983. R. 12, Amend. Compl. Stubenvoll's motion for summary judgment is before the Court. Mot. Summ. J.

### Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[4]The summary judgment briefs rely on a number of undisputed and disputed facts relating to Jackson's injury and subsequent medical care, but because the disposition of the motion does not rely on those facts, they are omitted from the background section.

[5]Stubenvoll asserts that because Jackson did not timely respond to Defendant's Requests to Admit, Defendants' Request for Admission No. 5 ("Admit that Plaintiff kicked Defendant in the groin area on December 2, 2015") is admitted. R. 136, Reply at 8 n.2 (citing Fed. R. Civ. P. 36(a)(3)). However, because the Court finds, as discussed further below, that Stubenvoll's

matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

Jackson has brought one claim in this case; he alleges, pursuant to 42 U.S.C. § 1983, that Stubenvoll violated his rights under the Fourteenth Amendment Due Process clause through the use of excessive force. Amend. Compl.

The Fourteenth Amendment Due Process Clause protects pretrial detainees from an officer's use of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 397

---

force, even without the kick, was *de minimis*, the Court need not address Jackson's failure to timely respond to the requests for admission.

(2015) (citation omitted). To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. A showing of "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court, moreover, makes the objective reasonableness determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* (citation omitted). A court "must also account for the 'legitimate interests that stem from the government's need to manage the facility in which the individual is detained . . . appropriately deferring to 'policies and practices that in the judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

Stubenvoll has moved for summary judgment on Jackson's excessive force claim, contending that: (1) Stubenvoll used *de minimis* force against an aggressive and defiant detainee, which does not amount to a constitutional violation; (2) Jackson has no injury under the Prison Litigation Reform Act (PLRA), which bars any recovery; and in the alternative (3) Stubenvoll is entitled to a qualified immunity defense. R. 136, Memo. Summ. J. The Court addresses Stubenvoll's first and third arguments. Because the Court agrees with Stubenvoll that Stubenvoll used *de minimis* force and is entitled to a qualified immunity defense, summary judgment is proper, and the Court need not address Stubenvoll's second argument.

## I. *De Minimis* Force

Stubenvoll argues that the record does not support Jackson's excessive force claim because any force used was *de minimis*, and in response to Jackson's aggressive and defiant behavior. Memo. Summ. J. at 4. Stubenvoll contends that *de minimis* force cannot support Jackson's excessive force allegation. *Id.*

In cases involving purported excessive force, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Relevant factors that bear on the reasonableness or unreasonableness of the force include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397 (citation omitted).

"[A]n excessive force claim under the Fourteenth Amendment must involve more than de minimis force. Excessive force under the Fourteenth Amendment is 'force that amounts to punishment.'" *Davis v. Phillips*, 2012 WL 912857, at *5 (C.D. Ill. Mar. 16, 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). *De minimis* force cannot plausibly be considered "punishment," or every "push or shove" of a pretrial detainee would give rise to a constitutional claim. *Id.* (citing *Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal

quotation and citation omitted); *Peterson v. Meris*, 2011 WL 3203675 *3 (N.D. Ill. 2011) ("[A]n excessive force claim cannot be predicated on a *de minimis* use of physical force.")). Although "a significant injury is not a prerequisite to an excessive force claim, . . . a lack of injury may reflect upon the amount of force used, it is not determinative of whether the force is *de minimis*." *Peterson*, 2011 WL 3203675, at *3 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 36–37 (2010)). No bright line rule exists as to whether the force used is *de minimis*. *See id.*

Some examples of *de minimis* force failing to support an excessive force claim in this Circuit include: closing a cuffport door on an inmate's hand causing swelling and tenderness, *see Outlaw v. Newkirk*, 259 F.3d 833, 839–40 (7th Cir. 2001); shoving inmate into doorframe once causing bruising on back, *see DeWalt v. Carter*, 224 F.3d 607, 619–20 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020); and pouring a bucket of water on prisoner causing the bucket to hit prisoner on head causing subsequent headaches, *see Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994).

On the other side of the coin, examples of force greater than *de minimis*, which could support an excessive force claim include: punching a prisoner with a closed fist, *see Thomas v. Stalter*, 20 F.3d 298, 301–02 (7th Cir. 1994); using a taser gun against prisoner after prisoner refused to get out of bed, *see Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009); and punching, kicking, kneeing, choking, and body slamming without provocation, causing bruised heel, back pain, and other injuries, *see Wilkins v. Gaddy*, 559 U.S. 34, 38–40 (2010).

Applying those concepts here, Jackson cannot escape summary judgment because, even if his account of the incident were accepted as true, a rational jury could not find that Stubenvoll's force was anything more than *de minimis*. Jackson concedes that on December 2, 2015, he initially refused to let Stubenvoll handcuff him unless the handcuffs were placed over his thermal sleeves. Pl.'s Resp. DSOF ¶ 20. Ten minutes later when Stubenvoll came back and was able to successfully cuff Jackson, Jackson admits that he "jawed" at Stubenvoll during the walk from his cell to the elevator, which Jackson acknowledges Stubenvoll interpreted as a verbal assault. *Id.* ¶¶ 22, 23. According to Jackson, once in the elevator, "Stubenvoll, using both hands, shoved Jackson into the elevator wall twice." PSOAF ¶ 17. After the elevator door opened, Jackson maintains that "Stubenvoll grabbed Jackson's handcuffs, spun Jackson around, and escorted Jackson to the holding area." *Id.* ¶ 27. At most, Jackson alleges that the two shoves resulted in a bruised and swollen shoulder, pain, mental anguish, emotional distress, and humiliation. Pl.'s Resp. DSOF ¶¶ 52, 57. Thus, even under Jackson's version of events, no reasonable jury could find Stubenvoll's force excessive because two shoves, following a refusal to be handcuffed and antagonistic "jawing" is *de minimis* and not "repugnant to the conscience of mankind," particularly where the shoves caused only shoulder swelling and pain. *See Outlaw*, 259 F.3d at 840 ("[M]inor injury supports the conclusion that the incident was at most a *de minimis* use of force not intended to cause pain or injury to the inmate").

9

Contrary to Jackson's assertion, finding that the pushes here constitute *de minimis* force, does not "declare[] open season on prisoners." Resp. at 11. Instead, the Court's holding is consistent with Seventh Circuit precedent regarding *de minimis* force. As the Seventh Circuit has stated, "[a] single shove that results in bruising is *de minimis* force that will not support a claim of excessive force." *Jones v. Walker*, 358 Fed. App'x 708, 713 (7th Cir. 2009). True, *Jones* involved an excessive force claim brought under the Eighth Amendment, 358 Fed. App'x at 713, and thus required that the force be both objectively *and* subjectively unreasonable, unlike Jackson's claim under the Fourteenth Amendment, which requires only objectively unreasonable force, *see Kemp v. Fulton Cty.*, 27 F.4th 491, 495 (7th Cir. 2022). The context of the Seventh Circuit's holding about a single shove not supporting an excessive force claim implies that it found that such force was not objectively unreasonable. *Jones*, 358 Fed. App'x at 713. However, because the court did not specify whether its holding was based on objectively or subjectively unreasonable force, the Court does not base its finding in this case only on *Jones*.

Importantly, the Court's holding is also consistent with the holdings of other district courts in this Circuit. In *Williams v. Dart*, for example, a pre-trial detainee plaintiff brought a Section 1983 action against a jail officer because the officer put her hands on the plaintiff and pushed him against the wall. 2018 WL 11239693, at *1 (N.D. Ill. Mar. 12, 2018). The *Williams* court dismissed the plaintiff's excessive force claim, reasoning that "not every malevolent touch by a prison guard gives rise

to a federal cause of action." *Id.* at *2 (citing *Hudson v. McMillian*, 503 U.S. 1 (1992)).[6] Relatedly, in *Floyd v. Nelson*, the plaintiff alleged two officers pushed him on separate occasions. 2002 WL 1483896 (N.D. Ill. July 11, 2002). However, the court found that neither push was greater than *de minimis* force, so the Court granted summary judgment in favor of the defendant. *Id.* at *8–9. Jackson does not even attempt to meaningfully distinguish these cases.

Jackson argues that Stubenvoll's force was excessive because the Cook County Sheriff's Department prohibits the use of force used by Stubenvoll. Resp. at 7 (citing PSAOF ¶ 14). The Sheriff's training manual, posits Jackson, prohibits, among other things, "[t]he use of force as a response to verbal insults/threats where there is no imminent danger." *Id.* But constitutional principles, rather than police or sheriff polices, govern the Court's excessive force inquiry. *See United States v. Brown*, 871 F.3d 532, 536–37 (7th Cir. 2017) ("a police officer's compliance with the rules of his department is neither sufficient nor necessary to satisfy the Fourth Amendment's reasonableness requirement"); *see also Turner v. City of Champaign*, 979 F.3d 563, 568-69 (7th Cir. 2020) (clarifying how "police training and best practices, while relevant, do not define what is reasonable under the Fourth Amendment."). That is, alleged violations of a regulation or policy are not *ipso facto*, civil rights violations.

---

[6]The court in *Williams* acknowledged that "*Hudson* involved an Eighth Amendment claim by a convicted prisoner and not a pretrial detainee's Fourteenth Amendment claim, which looks only to the objective reasonableness of the force." 2018 WL 11239693, at *2. The court nevertheless found "*Hudson*'s meaning that not every unjustified touch by an officer rises to the level of a constitutional violation clearly applies to Plaintiff's allegations." *Id.* So too here, the Court understands that a pretrial detainee's excessive force claim focuses on the objective reasonableness of force. Even so, the reasoning in the Eighth Amendment cases discussed throughout this decision apply to evaluating whether Stubenvoll's force was excessive here.

*See* Seventh Circuit Civil Pattern Jury Instruction 7.04. So, even if the Court accepted Jackson's allegation that Stubenvoll violated the Sheriff's policy, the Court still has to decide whether Stubenvoll's actions violated the Constitution. Here, the Court finds Stubenvoll's two shoves, even under Jackson's version of events, to be *de minimis* and not of the sort that constitutes impermissible "punishment."

Jackson cites *McCloud v. Harmon*, 2020 WL 2616395, at *3 (C.D. Ill. 2020) to support the argument that Stubenvoll's exerted force amounted to a constitutional violation. In *McCloud*, the court relied on an unpublished order from the Seventh Circuit, *Reid v. Melvin*, 695 F. App'x 982 (7th Cir. 2017), for the proposition that "[i]f no force is necessary, even *de minimis* force may not be used." 2020 WL 2616395, at *3. However, respectfully, that is not what the court said in *Reid*. In *Reid*, the district court dismissed the plaintiff's excessive force complaint by "focus[ing] on the extent of the injury [the plaintiff] suffered (*de minimis* . . . ), rather than the magnitude of the force [the guard] used." 695 Fed. App'x at 983. The court reasoned that "[w]hile *de minimis* uses of force are non-actionable, a prisoner need not suffer 'serious injury' in order to bring an Eighth Amendment claim." *Id.* (quoting *Hendrickson v. Cooper*, 589 F.3d 887, 890–91 (7th Cir. 2009)). When viewing the allegations in the light most favorable to the plaintiff, the Seventh Circuit could not "conclude that the degree of force [the guard] used was trivial enough to require dismissal." *Id.* The court further determined that the plaintiff's alleged situation was not one in which a prison guard "could reasonably use some degree of force to restore or maintain order" because the plaintiff alleged that he "was confined in his cell, and his hand was simply resting on

12

the opening in the door for the food trays in a manner that posed no threat to the guard." *Id.* at 984. All of this is to say, the Seventh Circuit did not declare in *Reid* that when no force is necessary, *de minimis* force may not be used, so the Court finds *McCloud* unhelpful to the constitutional analysis here.

In any event, *McCloud* does not advance Jackson's position because the facts here are distinguishable. In *McCloud*, the court could not ascertain, on a motion to dismiss posture, whether the plaintiff made a threshold showing that the force used was unnecessary: "[w]hile it might be that some force might have been needed under the circumstances, the Court cannot determine whether Plaintiff has made a threshold showing that the force was unnecessary . . . ." *Id.* 2020 WL 2616395, at *3. The court in *McCloud* therefore dismissed the plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Here, on summary judgment, Jackson has had the opportunity to pursue discovery to show that Stubenvoll's force was excessive. Jackson has failed to do so because even accepting as true that Stubenvoll shoved Jackson twice merely because Jackson refused to get into cuffs and was "jawing" Stubenvoll, those shoves still amount to *de minimis* force.

In addition, Jackson makes much ado about certain factual disputes in the record, including whether Jackson kicked Stubenvoll in the elevator (he claims he did not) and when the alleged kick took place (he claims Stubenvoll previously stated that Jackson only kicked Stubenvoll *after* Stubenvoll shoved Jackson). *See* Resp. at 1–2, 6–7, 8–9. While such factual disputes would typically give the Court pause, Jackson has failed to identify a *genuine* dispute of material fact. "A factual dispute is

13

genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Alston v. City of Madison*, 853 F.3d 901, 910–11 (7th Cir. 2017) (internal quotation marks and citations omitted). Here, the Court finds, that even if no kick took place, as Jackson insists, summary judgment is still proper because no reasonable jury could return a verdict for Jackson.

Jackson similarly emphasizes that Stubenvoll's statement changed between a video statement he made near the time of the incident and Stubenvoll's subsequent deposition. Resp. at 13. But, that goes to Stubenvoll's credibility, which the Court may not resolve at this stage. The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are reserved for the factfinder. *See Deets v. Massman Constr. Co.*, 811 F.3d 978, 982 (7th Cir. 2016) ("credibility determination[s] may not be resolved at summary judgment"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

In sum, Jackson has not directed the Court to sufficient evidence such that a reasonable jury could find in his favor on his excessive force claim. The Court therefore finds that summary judgment is proper on that basis. However, as discussed further below, even if summary judgment were not proper on that basis, the Court finds that it must grant summary judgment in light of Stubenvoll's qualified immunity defense.

## II. Qualified Immunity

Qualified immunity "'shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7 (2015) (*per curiam*)). "The doctrine of qualified immunity balances dueling interests—allowing officials to perform their duties reasonably without fear of liability on the one hand and 'affording members of the public the ability to vindicate constitutional violations by government officials who abuse their offices' on the other." *Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 987 (7th Cir. 2021) (internal citation omitted). "The purpose of qualified immunity is to protect 'all but the plainly incompetent or those who knowingly violate the law.'" *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Qualified immunity is an affirmative defense, but once a defendant properly raises the defense, the burden shifts to the plaintiff to defeat it. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2722 (2020). Here, Stubenvoll has properly raised the defense of qualified immunity, *see, e.g.*, *Buchanan v. Pfister*, 2020 WL 902829, at *12 (N.D. Ill. Feb. 25, 2020), so Jackson bears the burden of defeating the defense, *see Leiser,* 933 F.3d at 701.

In determining whether qualified immunity applies, courts engage in a two-prong inquiry. *Rose ex rel. Estate of Williams v. Cline*, 902 F.3d 643, 648 (7th Cir. 2018). Under the first prong, the court inquires whether the facts, in the light most

favorable to the injured party, show that the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Under the second prong, the court inquires whether the constitutional right was clearly established at the time of the challenged conduct. *Id.*

The Supreme Court has held that "use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 577 U.S. at 13). The Supreme Court further explained "[p]recedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id.* (quoting *Mullenix*, 577 U.S. at 14). To meet the burden of showing that defendant's conduct violated clearly established law, a plaintiff may offer closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *See Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018).

Jackson states that his excessive force claim should be analyzed under the Fourth Amendment. Resp. at 12. While this was the law until the Supreme Court decided *Kingsley v. Hendrickson* in 2015, now, courts evaluate pretrial detainee's excessive force claims under the Fourteenth Amendment. 576 U.S. 389, 389 (2015). But this difference does not fundamentally change the analysis, as excessive force

claims brought under the Fourth and Fourteenth Amendment are evaluated under substantially similar "objective reasonableness standards." *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008) (discussing the objective reasonableness standard applied to Fourth Amendment claims); *Davis v. Abdeljaber*, 2021 WL 1172597, at *2 (N.D. Ill. Mar. 29, 2021) (discussing the objective reasonableness standard applied to Fourteenth Amendment claims). What's more, the Seventh Circuit and other courts in this District have relied on cases addressing whether qualified immunity bars excessive force claims brought under the Fourth and Fourteenth Amendments interchangeably. *See Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013); *Davis v. Leginza*, 2021 WL 1172599, at *6 (N.D. Ill. Mar. 29, 2021). So, the cases addressing Fourth Amendment claims cited by Jackson, in support of his argument that qualified immunity does not bar his excessive force claim, are instructive. Resp. at 14.

The Court finds that none of the cases cited by Jackson are analogous such that they overcome Stubenvoll's qualified immunity defense. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 732 (7th Cir. 2013) (deploying a taser in dart mode against a nonviolent misdemeanant who had just been tased in dart mode and made no movement); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002) (shoving pulled-over driver to the ground, causing her to fall into the bushes, forcing a plastic breath screening device into plaintiff's mouth, cracking her tooth in the process, and refusing to loosen chafing handcuffs); *Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (grabbing individual, twisting arm, and shoving him toward the

wall and taking him to the floor when the individual did not pose a threat to the officers); *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) (intentionally restraining, jolting, and roughing up a pretrial detainee without physical provocation); *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) (noting that district court's decision denying summary judgment on qualified immunity defense was narrow, where district court found that there were missing facts about the relationship between officer's shove of handcuffed suspect into car and the harm suspect may have presented); *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (defendants were not entitled to qualified immunity on excessive force claim where they threw plaintiff "to the floor and applied substantial pressure to her back even though she responded with virtually no resistance and had given virtually no indication of fleeing"); *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 474–77 (7th Cir. 1997) (reversing district court's grant of defendant-officer's motion to dismiss plaintiff's excessive force claim, where officer's alleged force consisted of "one violent push and poke"; Seventh Circuit found that determining whether officer's actions were reasonable in light of the totality of the circumstances—as well as whether officer was entitled to qualified immunity—required an analysis of the evidence, including statements from witnesses, and thus was premature at the motion to dismiss stage).

The Court cannot say that, even under Jackson's version of events, Stubenvoll's "conduct in question [was] 'so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have

18

thought he was acting lawfully.'" *Dockery v. Blackburn*, 911 F.3d 458, 466–67 (quoting *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 723–24 (7th Cir. 2013)). In the absence of analogous precedent, courts in this District have found that a plaintiff's right to be free from excessive force was obviously violated when the evidence supported a finding of much more extreme force than the force Jackson claims Stubenvoll applied here. *See, e.g.*, *Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016) (defendant-police officers' alleged actions, if proven, in commanding a dog to attack plaintiff-suspect who was complying with orders, and punching, stomping, and kicking him when he was on the ground, violated the plaintiff's clearly established rights for qualified immunity purposes); *Godinez v. City of Chicago*, 2019 WL 5592721, at *9–11 (N.D. Ill. 2019) (defendant-officers stepped on plaintiff's shoulder and head, while plaintiff was handcuffed and lying on his stomach, until plaintiff became unconscious and later died); *see also Herzog*, 309 F.3d at 1043. Jackson has not presented a version of facts before the Court demonstrating Stubenvoll's use of force was anywhere near as extreme as that at issue in *Alicea*, *Godinez*, or *Herzog*, nor has Jackson presented evidence that Stubenvoll's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *See Dockery*, 911 F.3d at 466.

Thus, even if summary judgment was not warranted in Stubenvoll's favor based on the *de minimis* use of force, he would be entitled to summary judgment due to qualified immunity.

### III. **Prison Litigation Reform Act (PLRA)**

Stubenvoll also moves for summary judgment on the basis that Jackson did not suffer an injury and that therefore his claim is barred under the PLRA. The Court declines to decide the issue, as it has found that summary judgment is warranted for Stubenvoll because Jackson has not produced sufficient evidence demonstrating that Stubenvoll's force was excessive, and even if he had, his claim is barred by the doctrine of qualified immunity.

### Conclusion

For the reasons discussed above, the Court grants Stubenvoll's motion for summary judgment [135]. Jackson failed to demonstrate that a reasonable jury could find for him on his excessive force claim. Stubenvoll is further entitled to a defense of qualified immunity here. The Court accordingly enters summary judgment in favor of Stubenvoll and against Jackson. Civil case terminated.

Dated: March 31, 2022

United States District Judge
Franklin U. Valderrama